IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL DOCKET NO. 3:08-CR-0167-B |
| | § | |
| COREY DEYON DUFFEY (01) | § | |
| TONY R. HEWITT (02) | § | |
| JARVIS DUPREE ROSS (03) | § | |
| CHARLES RUNNELS (05) | § | |
| ANTONYO REECE (06) | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM ORDER

Before the Court are the Motions to Suppress Wiretap filed by Defendants Tony Hewitt (doc. 101), Charles Runnels (doc. 142), and Corey Duffey (doc. 153), as well as the Supplemental Motion to Suppress Wiretap (doc. 161) filed by Tony Hewitt. Defendant Jarvis Ross joins in the Motions filed by Tony Hewitt and Charles Runnels.

In addition to the motions seeking to suppress the wiretap, the Court has before it the Motion for Specific Discovery and to Compel Identity of Government's Informants (doc. 160) filed by Tony Hewitt. Defendant Jarvis Ross also joins in this motion. As the Court has informed the parties on the record, these motions are assumed by the Court to be adopted by all Defendants. Thus, the rulings on these motions apply to all Defendants. Upon review of the briefing and the arguments of counsel at the July 21, 2009 hearing before this Court, and for the reasons discussed below, the above-named motions (docs. 101, 142, 153, 160, and 161) are **DENIED**.

# I.

# BACKGROUND

In May 2008, the FBI was investigating a group of armed robbers dubbed the "Scarecrow Bandits" that had violently robbed more than twenty banks in the Dallas area since July 2007. (Gov't.'s Consol. Response (doc. 149) at 5.) During these robberies, bank employees and customers were held at gunpoint and physically assaulted with firearms and stun guns. (*Id.*; Aff. in Supp. of Application for W.I. No. 08-013 ¶¶ 13–106.) For several months, the FBI used various investigative methods, including physical surveillance, cell phone records, and tracking devices to obtain information about the alleged bank robbers and their activities. (Aff. in Supp. of Application for W.I. No. 08-013 ¶¶ 120–34 .)

The FBI obtained cell site "dump" records corresponding to the area and time of a dozen bank robberies by the Scarecrow Bandits between November 15, 2007 and April 24, 2008. (Gov't.'s Consol. Response (doc. 149) at 5–6.) These "dump" records reflect the cellular telephones using the cell tower closest to the banks at the time of the robberies. (*Id.* at 6.) These extensive records show Defendants Hewitt and Duffey's cellular telephones used those cell towers at or around the time of each robbery. (*Id.*) There were also numerous calls between other members of the group under investigation that were linked to Hewitt and Duffey's phones, as well as to the cell tower near the banks that were robbed. (Aff. in Supp. of Application for W.I. No. 08-013 ¶ 119.) The FBI also obtained information from four informants concerning the identities and activities of some of the Scarecrow Bandits. (Gov't.'s Consol. Response (doc. 149) at 6.) These informants corroborated the investigation previously conducted by the government, as well as information provided by other

confidential informants. (*Id.*; Aff. in Supp. of Application for W.I. No. 08-013 ¶ 9; Aff. in Supp. of Application for W.I. No. 08-014 ¶¶ 8–9.) Extensive details of the phone records and activities of the defendants, too numerous to set forth in detail in this Order, are found in the affidavits supporting each of the wiretap applications. (W.I. No. 08-013; W.I. No. 08-014; W.I. No. 08-016.)

On May 15-16, 2008, during the course of its ongoing investigation, the FBI observed Hewitt and other co-defendants surveilling an area in Fort Worth, Texas that included four banks. (Gov't.'s Consol. Response (doc. 149) at 6; Aff. in Supp. of Application for W.I. No. 08-013 ¶¶ 115–16.) During that time, members of the group under investigation were also seen loading duffel bags and objects that appeared to be long guns, such as the kind used in the bank robberies, into the trunk of a car. (Gov't.'s Consol. Response (doc. 149) at 6; Aff. in Supp. of Application for W.I. No. 08-013 ¶ 116.) On May 21, 2008, the FBI observed members of the group "casing" two banks in Richardson, Texas, and meeting together in various places near the banks. (*Id.* at 7; Aff. in Supp. of Application for W.I. No. 08-013 ¶¶ 116–17.) At that point, "the FBI believed that the Scarecrow Bandits were poised to commit an armed robbery of one or more of the six banks that had been cased and that an emergency wire interception was necessary to determine exactly when and where they would strike so as to avoid the risk of injury and death to bank employees and customers." (Gov't.'s Consol. Response (doc. 149) at 7; Aff. in Supp. of Application for W.I. No. 08-013 ¶¶ 117, 136.)

On the evening of May 21, 2008, at 10:35 p.m., the Director of the FBI and Attorney General determined that an emergency situation existed to justify the interception of communications over the targeted telephone. (Gov't.'s Consol. Response (doc. 149) at 7.) On May 22, 2008 at 12:28 a.m, the FBI began to intercept calls on a cellular telephone belonging to

Defendant Hewitt without a warrant. (*Id.*) The government subsequently applied for wiretap orders for the interception that had already begun on an "emergency" basis and for a 30-day wiretap going forward. (W.I. No. 08-013; W.I. No. 08-014.) On May 23, 2008, at 3:40 p.m., the government obtained authorization for the emergency wiretap and a court order authorizing the interception of calls over the target telephone used by Hewitt for thirty days. (Gov't.'s Consol. Response (doc. 149) at 7; W.I. No. 08-013, W.I. No. 08-014.) An order authorizing the interception of calls from a cellular phone used by Defendant Duffey was obtained on May 30, 2008. (W.I. No. 08-016.) Now, as the case progresses to trial, the defendants seek to suppress evidence obtained from these wiretaps.

## II.

## MOTIONS TO SUPPRESS WIRETAP EVIDENCE

**A.  Legal Standards**

In order to intercept wire, oral, or electronic communications, an investigative officer must obtain authorization under 18 U.S.C. § 2518. Obtaining authorization requires both that the officer establish probable cause that the individual is committing an offense enumerated in 18 U.S.C. § 2516 and that particular communications concerning that offense will be obtained through said interception. 18 U.S.C. § 2518(3).[1] Such interception should not be a first option; rather, the

---

[1] 18 U.S.C. § 2518(3) states the following:

> Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction), if the judge determines on the basis of the facts submitted by the applicant that—

statute requires that the government bring forth facts to support a determination that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." *United States v. Giordano*, 416 U.S. 505, 515 (1974);18 U.S.C. § 2518(3)(c). In interpreting the statute, the Fifth Circuit has clarified that the statute "must be read in a common sense fashion." *United States v. McCoy*, 539 F.2d 1050, 1055 (5th Cir. 1976) (quoting *United States v. Robertson*, 504 F.2d 289, 293 (5th Cir. 1974)). That is, to uphold a wiretap order, "all that need be found . . . is a 'factual predicate.'" *Id.* (quoting *United States v. Armocida*, 515 F.2d 29, 38 (5th Cir. 1975)). The language of the statute "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974). The government does not have the burden of demonstrating that every other method of investigation has been

---

(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;

(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

(d) except as provided in subsection (11), there is probable cause for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

18 U.S.C. § 2518(3).

unsuccessfully attempted. *McCoy*, 539 F.3d at 1055; *see also United States v. Pacheco*, 489 F.2d 554, 565 (5th Cir. 1974).

When prior authorization is not possible and a specially designated officer reasonably determines that an "emergency situation exists," 18 U.S.C. § 2518(7)[2] permits temporary interception of communications, provided an order authorizing the interception is obtained within forty-eight hours of the initial interception. This "emergency" authorization offers a narrow

---

[2] 18 U.S.C. § 2518(7) states:

> Notwithstanding any other provision of this chapter, any investigative or law enforcement officer, specially designated by the Attorney General, Deputy Attorney General, the Associate Attorney General, or by the principal prosecuting attorney of any State, [] who reasonably determines that —
>
> > (a) an emergency situation exists that involves —
> >
> > > (i) immediate danger of death or serious physical injury to any person,
> > >
> > > (ii) conspiratorial activities threatening the national security interest, or
> > >
> > > (iii) conspiratorial activities characteristic of organized crime,
> >
> > that requires a wire, oral, or electronic communication to be intercepted before an order authorizing such interception can, with due diligence, be obtained, and
> >
> > (b) there are grounds upon which an order could be entered under this chapter to authorize such interception,
>
> may intercept such wire, oral, or electronic communication if an application for an order approving the interception is made in accordance with this section within forty-eight hours after the interception has occurred, or begins to occur.

exception to the general rule that all wire interceptions be previously authorized under the law. The Second Circuit has stated, in reference to these wiretap provisions, that "Congress had in mind by the use of the term 'emergency' an important event, limited in duration, which was likely to occur before a warrant could be obtained." *United States v. Capra*, 501 F.2d 267, 277 n.8 (2nd Cir. 1974).

There are few cases which squarely address the question of what constitutes an "emergency" under the statute. In a case from the Northern District of California, the court reasoned that the provision allowing interception without a warrant in a situation where an emergency requiring interception before judicial approval can be obtained with due diligence exists, "seems to indicate that there must be evidence that the event causing the danger of death or injury will take place in two days at the very most." *United States v. Crouch*, 666 F.Supp. 1414, 1417 (N.D. Cal. 1987). In *Crouch*, a confidential informant had told authorities that a group of suspects with a violent history was planning a robbery that would take place within sixty days. *Id.* at 1416. The evidence revealed that the robbery was still in its planning state and the court found that there was no evidence that the bank robbery was going to happen immediately. *Id.* at 1417. "At no point did the situation rise to the level of an imminent danger of serious injury or death." *Id.* Thus, the court in *Crouch* granted a motion to suppress the wiretap evidence because the warrantless interception did not meet the emergency exception. *Id.* at 1417–18.

On the other hand, in a Sixth Circuit case where the defendant had allegedly kidnapped a bank manager in order to extort money from the bank, the court affirmed the lower court's decision not to suppress the wiretap evidence. *Nabozny v. Marshall*, 781 F.2d 83, 84–85 (6th Cir. 1986). In such a situation, the "emergency" exception had been met because there was an imminent threat of

death or bodily injury. *Id.* at 85. The court also noted in *Nabozny* that the legislative intent of the statute was to address concerns "with the pervasive influence of organized crime . . . ." *Id.* (citing 1968 U.S. Code Cong. & Ad. News 2112, 2157).

Like any ordinary search warrant, an order authorizing a wiretap must be supported by a finding of probable cause. *United States v. Gonzales*, 866 F.2d 781, 786 (5th Cir. 1989). "The task of the issuing judge is to make a common sense decision whether the affidavit shows a fair probability that evidence will be obtained, according to all the circumstances, including the veracity and basis of knowledge of anyone supplying hearsay information." *Id.* The Fifth Circuit has instructed that "probable cause is to be gleaned from a 'common sense reading of the entire affidavit.'" *McCoy*, 539 F.3d at 1055; *United States v. Hyde*, 574 F.2d 856, 863 (5th Cir. 1978). The Supreme Court has adopted the "totality of the circumstances" test for probable cause. *Illinois v. Gates*, 462 U.S. 213, 230–231 (1983). Under these guidelines, the issuing judge is permitted to draw reasonable inferences given all of the circumstances. *Id.* at 238. In *Gates*, the Supreme Court stated that "[i]n dealing with probable cause, . . . as the very name implies, we deal with probabilities. . . . [t]hese are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 231. The determination that probable cause exists is entitled to "great deference" by a reviewing court. *Gates*, 462 U.S. at 236; *United States v. Settegast*, 755 F.2d 1117, 1121 (5th Cir. 1985). "In doubtful or marginal cases, resolution of the question whether probable cause exists 'should be largely determined by the preference to be accorded to warrants.'" *Settegast*, 755 F.2d at 1121 (citing *Gates*, 462 U.S. at 237 n. 10).

Section 2518 provides that any "aggrieved person" may move to suppress the contents of any

wire or oral communications intercepted pursuant to the statute, or evidence derived therefrom on the grounds that —

> (i) the communication was unlawfully intercepted;
>
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
>
> (iii) the interception was not made in conformity with the order of authorization or approval.

18 U.S.C. § 2518(10)(a). The burden of proof is on the movant seeking suppression of evidence to produce "some evidence on specific factual allegations sufficient to make a prima facie showing of illegality." *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977) (citing *Nardone v. United States*, 308 U.S. 338 (1939)). "[G]eneral, conclusory allegations based upon mere suspicions do not entitle a defendant to have evidence suppressed." *Id.*

**B.     Analysis of W.I. No. 08-013: "The Emergency Wiretap"**

In this case, the government began warrantless interceptions of communications on Tony Hewitt's cellular telephone on May 22, 2008, then obtained a wiretap order within forty-eight hours (W.I. 08-013) and a thirty-day wiretap order based in part on information obtained through the emergency wiretap (W.I. 08-014). Subsequently, a thirty-day wiretap was obtained on Duffey's phone (W.I. 08-016). The Defendants seek to have the wiretap evidence suppressed. The Defendants' argue, collectively, that the emergency wiretap in 08-013 was illegal because (1) there were various technical deficiencies in the application and authorizations, and (2) an emergency did not exist to substantiate the warrantless interception; and (3) the availability of other investigative tools to perform the investigation.

*1. Facial Insufficiency*

The arguments that the authorizations and affidavits were insufficient on their face are brought forth only briefly through unsupported conclusory statements under the heading "common deficiencies" in the identical motions filed by Hewitt and Runnels (docs. 101, 142). The motions also list, under numbers one through five of "specific challenges" to W.I. 08-013, a litany of technicalities with no analysis of why these facts should render the wiretap illegal.[3] The Defendants offer no legal or factual support for these allegations and rely only on conclusory statements. In response, the government argues that 18 U.S.C. § 2518(7) allows officers to obtain a warrant after they commence a wiretap and that formal problems with the memorandum, such as the failure to name the Attorney General, are irrelevant because the memorandum is not the requisite authorization. (Gov't.'s Consol. Resp. (doc. 149) at 9–11.) The conclusory allegations contained

---

[3] Defendants argue that the following technical deficiencies make Wiretap 08-013 insufficient:

> (1) There was no order in placing authorizing the May 22, 2008 interception.
>
> (2) The W.I. No. 08-13 authorization does not name the Director of the FBI or the person who authorized the interception.
>
> (3) There are conflicts in the Memorandum by Special Agent Robert Casey dated May 23, 2008.
>
> (4) The application does not state the name of the Attorney General who approved the emergency wiretap.
>
> (5) The affidavit does not name the director of the FBI nor does it name the Attorney General.
>
> (6) The affidavit uses "boiler plate language" that would apply to nearly every conspiracy.

(Motion to Suppress Wiretap (docs. 101, 142) at 2-5.)

in these motions, with no analysis or factual support, do not entitle a defendant to suppress the evidence and, regardless, are dealt with sufficiently by the government's response that points out the facts clearly laid out in the affidavits themselves. *See de la Fuente*, 548 F.2d at 533. Under the plain reading of the statute, many of these alleged insufficiencies are not requirements under the statute. *See* 18 U.S.C. § 2518(7). Furthermore, a minor inaccuracy which is not a distortion of material fact does not invalidate a warrant. *Settegast*, 755 F.2d at 1120; *United States v. Robertson*, 504 F.2d 289, 291–92 (5th Cir. 1974) (citing *United States v. Chavez*, 416 U.S. 562 (1971)); *accord United States v. Vigi*, 515 F.2d 290, 293 (6th Cir. 1975) ("[18 U.S.C. § 2518](10)(a)(ii) does not require suppression for every minor facial insufficiency.").

### *2. Emergency*

The main focus of Defendants' arguments is that no emergency existed to substantiate a warrantless wiretap. If the government intercepted communications without a warrant and no emergency existed for doing so, then the evidence here should be suppressed. 18 U.S.C. § 2518(10)(a). The critical question here is whether the circumstances facing the FBI were of the peculiar kind that merit interception without a warrant. 18 U.S.C. § 2518(7). Thus, the Court must determine if the circumstances surrounding the initial wiretap constituted an emergency. *Id.*

In support of their argument that no emergency existed, Defendants argue that a potential future bank robbery did not present any threat of violence and that there was no immediate danger of death or physical injury. Defendants cite *Crouch* in support of their argument that there was no imminent danger of death or serious injury. *See Crouch*, 666 F. Supp. at 1415. However, unlike *Crouch* where the information indicated the individuals involved were not ready to commit the crime

yet, which is relied upon by defendants as an example that a bank robbery is not a potential threat, here all indications pointed to another violent bank robbery being imminent, not at some distant point in the future. *See id.*

The Defendants also argue there was no indication that any future robbery would be violent and that any argument a future robbery would be violent is merely "speculation." In its Response, the government notes that the Scarecrow Bandits had used assault rifles and shotguns in their previous bank robberies and that they were seen loading what appeared to be long guns into a car and transporting them. (Gov't.'s Consol. Response (doc. 149) at 6; Gov't.'s Response to Suppl. Mot. at 7; Aff. in Supp. of Application for W.I. No. 08-013 ¶ 116.) Here, the facts of the situation indicate there was an emergency because, based on the surveillance of the group, they had been "casing" several banks within days of each other, were seen loading duffel bags appearing to contain weapons into a car, and had been violent in the previous take-over bank robberies. Confidential informants and agent surveillance provided facts indicating there was to be another robbery soon, which would put innocent bank customers and employees in serious danger.[4] The government also points out that Hewitt had numerous contacts with the other known members of the Scarecrow Bandits, which was corroborated by confidential informants and cell phone records. Cell phone

---

[4] Defendants argue that the supporting affidavits fail to establish the reliability of the confidential informants, but provide no legal or factual support for this assertion. Yet the Affidavits state that the information from all four informants was corroborated by the FBI and the other informants. (Aff. in Supp. of Application for W.I. No. 08-013 ¶ 9.) In addition, one of the four informants had previously offered reliable information in past investigations for approximately three years. (*Id.*) Each of the other informants had been reporting to authorities on the for approximately three months. (*Id.*) Therefore, contrary to the Defendants' objections, the government did make it clear why the confidential informants were believed to be credible and why the information was deemed to be reliable by the FBI. (Aff. in Supp. of Application for W.I. No. 08-013 ¶ 9; Aff. in Supp. of Application for W.I. No. 08-014 ¶¶ 8-9.)

"dump" records indicated Hewitts' cell phone was used during the robberies of the dozen banks between November 15, 2007 and April 24, 2008.

Still, Defendants claim that speculation based on previous robberies does not establish "imminence" as required by law. But such a reading of 18 U.S.C. § 2518(7) is contrary to the "commonsense" standard used in the Fifth Circuit. *See McCoy*, 539 F.2d at 1055. A plain reading of 18 U.S.C. § 2518(7) requires that an officer "reasonably determine" that an emergency situation exists. *See* 18 U.S.C. § 2518(7); *McCoy*, 530 F.2d at 1055 . Based on evidence presented, including the increased activity of casing several banks, the fact that the members of the group were seen loading what appeared to be long guns into a car, and the violent history of the robberies, it is not unreasonable for the government to assume that the Defendants would handle or even discharge a weapon soon during an upcoming robbery. *See* 18 U.S.C. § 2518(7); *McCoy*, 530 F.2d at 1055.

Because the FBI had no idea which of the six banks that had been "cased" in those few days would be robbed, and it did not want to risk another violent robbery to occur which could lead to the serious physical injury or death of an innocent bank customer or employee, it was reasonable to obtain authorization to begin an emergency wiretap. Approached under the "common sense" reading of the affidavits, and a view of the entire circumstances, the information from the informants, together with the corroborating facts garnered from the agents' own investigations, there was probable cause for issuing the order approving the emergency interception. *See Gonzales*, 866 F.2d at 786; *see also Gates*, 462 U.S. at 233.

### 3. *Availability of Other Investigative Tools*

The Defendants also assert that the wiretaps are illegal because the government had other

investigative tools available to them such as "trash searches, pole cameras, or financial investigations." However, in the Affidavit in support of W.I. No. 08-013, the government states that "traditional investigative methods have been, and will continue to be employed in this investigation," but that "interception of wire and electronic communications . . . is the only available investigative technique that has a reasonable likelihood of success in assisting to secure the evidence needed. . .". (Aff. in Supp. of Application for W.I. No. 08-013 ¶ 120.)

Before the government determined that an emergency situation existed, it claims that it used various methods of surveillance, including physical surveillance and the use of a tracking device, but that these methods were inadequate in predicting the location of the next bank robbery. (*Id.* at ¶ ¶ 122–24.) While Defendants contend that the FBI could have attempted other methods of investigation, the law does not require that the FBI exhaust every conceivable method before resorting to wire interception. *See Giordano*, 416 U.S. at 515; *Kahn*, 415 U.S. at 153 n.12. Nor is the government required to prove that every other possible investigative procedure has been unsuccessful. *See Giordano*, 416 U.S. at 515. The government has shown that it used the interception only after a series of other investigative techniques had been used, but were inadequate to provide the information need by the agents. Furthermore, the interception was required to apprehend the suspects before another violent bank robbery occurred. *See McCoy*, 539 F.2d at 1055.

### *4. Conclusion for W.I. No. 08-013*

The Court finds that the defendants have not brought forth sufficient evidence to indicate the W.I. No. 08-013 was illegally obtained. *See de la Fuente*, 548 F.2d at 533; 18 U.S.C. § 2518(10)(a). The factual predicate exists to show the emergency wire interception was proper, that

probable cause existed, and therefore, the evidence obtained from the wiretap need not be suppressed in this case. *See McCoy*, 539 F.2d at 1055; *Gates*, 462 U.S. at 236; *Settegast*, 755 F.2d at 1121.

**C.     Analysis of W.I. No. 08-014: "The Hewitt Thirty-day Wiretap"**

Wiretap order 08-014 is also challenged by these motions, but the challenge lies solely in the alleged use of the "illegal" emergency wiretap information to substantiate the thirty-day wiretaps and an alleged failure to establish probable cause. Defendants make two main arguments regarding W.I. No. 08-014: first, they argue that the supporting affidavit contains illegally seized information from the emergency wiretap; and second, they argue that the supporting affidavit fails to establish probable cause that the target phone has been used to facilitate and commit crimes. The Court considers each of these arguments in turn.

Defendants argue that the supporting affidavit contains illegally seized information from the emergency wiretap. Consequently, Defendants move that the Court also suppress evidence gained from W.I. No. 08-014. In response, the government argues that because an emergency existed, the emergency wiretap was not illegally obtained and therefore information included in the thirty-day wiretap is not illegal. The Court finds that W.I. No. 08-013 was obtained legally, and therefore, the information from W.I. No. 08-013 could be used in the supporting affidavit for W.I. No. 08-014. Because the Court has determined 08-013 was legally obtained and should not be suppressed, the defendants' argument against 08-014 fail.

The Defendants also argue that probable cause did not exist to justify the Hewitt thirty-day wiretap. However, as discussed above in regard to W.I. No. 08-013, there was probable cause to

believe the co-defendants had committed or were planning to commit another bank robbery, based on the co-defendants' actions. Furthermore, the government points out that the emergency wiretap revealed at least three calls in which the Defendants discussed and planned the bank robbery. (Gov't.'s Consol. Response (doc. 149) at 16.) Given that much of the basis for the Hewitt thirty-day wiretap is information garnered from the emergency wiretap as well as other investigative methods, the government offered substantial evidence that wire interception would aid in the recovery of evidence. The Court finds that there was probable cause to justify the Hewitt thirty-day wiretap and the evidence stemming from it need not be suppressed. *See Settegast*, 755 F.2d at 1121.

**D.     W.I. No. 08-016: "The Duffey Thirty-day Wiretap"**

Regarding W.I. No. 08-016, Defendants argue that the supporting affidavit contains illegally seized information from both the emergency wiretap and Hewitt thirty-day wiretap. The defendants argument against 08-016 revolve only around the "illegally" obtained information resulting from 08-013 and 08-014. In response, the government argues that neither the emergency wiretap nor the Hewitt thirty-day wiretap was illegally obtained, and as a result, information gained from W.I. No. 08-016 should not be suppressed.

Like the argument for suppressing the Hewitt thirty-day wiretap, Defendant's sole argument rests on the assertion that the W.I. No. 08-013 emergency wiretap was illegal and there was no probable cause to issue this wiretap. Because the Court has found that W.I. No. 08-013 was obtained legally, then the information from the emergency wiretap and the subsequent Hewitt thirty-day wiretap could be used to support the application for this wiretap. The Court finds that there was

probable cause to justify the Duffey thirty-day wiretap and the evidence stemming from it need not be suppressed. *See Settegast*, 755 F.2d at 1121.

## III.

## MOTION FOR SPECIFIC INFORMATION AND MOTION TO COMPEL IDENTITY OF THE GOVERNMENT'S INFORMANTS

The Motion for Specific Information and to Compel Identity of the Government's Informants (doc. 160), in part it just asks for standard discovery allowed by Rule 16. However, it also asks for the **identity** of the four confidential informants used by the government in obtaining W.I. 08-013 and 08-014, arguing the disclosure is required where it is "relevant and helpful to the defense or is essential to a fair determination of a cause." Defendant argues the informants were "essential in establishing probable cause for a wire communications interception order," but does not explain how disclosure of their identity would be helpful or essential to a fair determination. The information they provided was corroborated by the agents working on the case, and was certainly not the only information used to establish probable cause. The government notes that it does not intend to call these informants as material witnesses and they were not essential participants to the offenses charged.

The Government's right to withhold the identity of persons who furnish information to officers has been recognized by the Supreme Court. *Scher v. United States*, 305 U.S. 251, 254 (1983). However, when disclosure of an informant's identity or communications is relevant and helpful to an accused's defense or essential to a fair determination of the cause at issue, the privilege must give way and disclosure may be required. *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957). The Government's response points out that it is the Defendant's burden to establish the necessity of

disclosure. *See id.*; *United States v. Smith*, 780 F.2d 1102, 1107–110 (4th Cir. 1985). The Court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro*, 353 U.S. at 62. "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* Where there is sufficient evidence apart from the informant's confidential communication used to establish probable cause for a search without a warrant, the government may not be required to disclose the identity of the informant. *See id.* at 61 (citing *Scher*, 305 U.S. 251).

Here, the Defendants have brought forth no argument to indicate why having the identity of the informants would be helpful to his defense or necessary to a fair determination. *See id.* at 62. Hewitt has simply made requests for the information and indicated it was used to establish probable cause for the wiretaps. But the informant information was not the only evidence relied upon by the Government to support probable cause in its applications to authorize the wire interceptions. *See id.* at 61. Furthermore, the government has set forth persuasive reasons why the informants' identities should be kept confidential, in the interest of their safety.[5] By failing to elaborate on why the information or identity of the informant is relevant and helpful to an accused's defense or essential to a fair determination of the cause at issue, Hewitt has not carried his burden to show the necessity for disclosure, so the request for informants' identities should be denied. *See id.* at 60–61.

In the alternative, Hewitt requests the contents of the informants' communications be

---

[5] The Government refers to an incident a week before the defendants' arrest where members of this group were allegedly involved in a drive-by shooting of people who had supplied police with information leading to the arrest of one of the co-defendants for murder in a separate incident.

disclosed, noting that such disclosure is allowed where the communication will not tend to reveal the informants' identity. However, there is no further argument made for why the information itself is needed, either. Again, the movant has the burden to show why disclosure of this information is required and, here, the burden is not been met by a mere request for the information. *See Roviaro*, 353 U.S. at 60–61.

## IV.

## CONCLUSION

The Court finds that the wiretaps in this case were legally obtained and evidence obtained through the wiretaps need not be suppressed. Therefore, the Motions to Suppress Wiretap filed by Defendants Hewitt (doc. 101), Runnels (doc. 142), and Duffey (doc. 153), as well as the Supplemental Motion to Suppress Wiretap (doc. 161) filed by Hewitt, are **DENIED.**

Furthermore, because the Defendants have not carried their burden to establish that disclosure of the identity of the informants or the information obtained from the informants is required, the Motion for Specific Discovery and to Compel Identity of Government's Informants (doc. 160) is **DENIED in part**, as to the informant information, but **GRANTED in part** as to the request for certain other discovery from the government, to the extent allowed by Federal Rule of Civil Procedure 16.

**SO ORDERED. Dated: July 30, 2009.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE